United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 05-0695 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS** |
| MAXIMILLIAN HERRERA, | **(Docket Nos. 21, 22, 23, 33)** |
| Defendant. | |
| _____ | |

## I.   FACTUAL AND PROCEDURAL BACKGROUND

In the early hours of October 3, 2005, Defendant Maximillian Herrera ("Mr. Herrera") was sitting in his truck at Immigrant Point in the Presidio of San Francisco, California (Mot. Suppress Hr'g Tr. 5, April 19, 2006). Mr. Herrera's truck was parked in a handicapped stall (Tr. 90-91), which was located in front of the edge of a cliff (Tr. 53). At approximately 1:00 a.m., United States Park Police Officer Campbell drove past Mr. Herrera's parked truck and observed a person sitting inside the truck (Tr. 5-6). Officer Campbell then reversed his vehicle, meanwhile shining his light to illuminate the area around the truck, and observed Mr. Herrera moving towards the center console (Tr. 5-6). Officer Campbell also noticed the truck was parked in a handicapped stall (Tr. 41). Parking his vehicle a few feet directly behind and perpendicular to the truck (Tr. 22-23), Officer Campbell blocked about three-quarters of the truck with his police vehicle (Tr. 36). After exiting his vehicle, Officer Campbell slowly approached the passenger side of the truck, placing his hand over the gun in his holster as he approached (Tr. 27, 75). During his approach, Officer Campbell observed Mr. Herrera wiping his hands on his pants (Tr. 12, 17). Officer Campbell first asked Mr.

1  Herrera whether he was ok and Mr. Herrera replied that he was (Tr. 14). While speaking to Mr.
2  Herrera, Officer Campbell observed a white residue on Mr. Herrera's black pants (Tr. 14).

3  Next, Officer Campbell inquired about the center console; however, the facts surrounding the
4  inquiry are in dispute. While Officer Campbell claims he asked only asked Mr. Herrera once to
5  open the console and Mr. Herrera silently complied (Tr. 15), Mr. Herrera testifies he initially replied
6  that there was nothing in the console but Officer Campbell instructed him a second time to open the
7  console (Tr. 55, 83-84). It is undisputed that a glass bottle of white powder was found inside the
8  center console (Tr. 16-17). Mr. Herrera is charged in a two-count indictment with a violation of 21
9  U.S.C. § 844(a), possession of a mixture containing a detectable amount of cocaine, and 36 C.F.R §
10 2.4(b) possession of a loaded weapon in a motor vehicle.

11 Mr. Herrera submitted the Motion to Suppress Evidence based on allegations that the officers
12 unlawfully detained and searched Mr. Herrera, and that all tangible and intangible evidence obtained
13 as a result of such unlawful detention should be suppressed. Mr. Herrera bases his claims for
14 suppression on the fact that (1) his detention by the police officer was without reasonable suspicion,
15 (2) that even if the detention was based on reasonable suspicion, the detention and search exceeded
16 the permissible scope, and (3) that Mr. Herrera did not voluntarily consent to Officer Campbell's
17 request to open the center console. *See* Def.'s Mot. Suppress. The government responds in its
18 Opposition to Defendant's Motion to Suppress that (1) Officer Campbell was authorized in the
19 initial encounter based on his reasonable suspicion of criminal activity, (2) Officer Campbell's
20 inquiry following the initial encounter was based on additional suspicious factors of drug contraband
21 possession, and (3) Mr. Herrera voluntarily consented to the search of his vehicle. *See* Gov't Opp'n.
22 Mot.

23 The Court held an evidentiary hearing on Defendant's Motion on April 19, 2006. The parties
24 filed post-hearing briefs on the Motion and the Court heard oral argument on the Motion on June 7,
25 2006.
26 ///
27 ///
28 ///

2

## II. **LEGAL STANDARD**

A. Warrantless Stop or Detention

A warrantless stop or detention, short of a full custodial arrest, is permitted upon a showing that "the officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons which whom he is dealing may be armed and presently dangerous." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Even if the officer lacks probable cause, the officer may stop a person if he has reasonable suspicion of criminal activity based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. However, the officer must be able to "articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *id.* at 27).

To determine whether there is the requisite reasonable suspicion, two elements must be met. Under the first element, the assessment must evaluate the totality of the circumstances and consider the "various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers." *United States v. Cortez*, 449 U.S. 411, 418 (1989). From this information, an officer may "draw inferences and make deductions" based on his training. *Id.* The second element requires that in considering this totality of the circumstances, the officer must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.*

In addition to a finding of reasonable suspicion or probable cause, the stop and search must be reasonable in both intensity and scope. *Florida v. Royer*, 460 U.S. 491, 500 (1983). In other words, the scope of the search must be "'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Id.* at 19 (quoting *Warden v. Hayden*, 387 U.S. 294, 310 (1967)). Thus, in *Terry*, because the search (beyond the initial investigative approach) was justified by concern for the officer's safety, the scope of the permissible search was narrowly tailored for the purpose of determining whether the person was in fact carrying a weapon and to neutralize the threat of physical harm. *Id.* at 30. It was not a search to obtain and preserve evidence.

A stop or detention occurs "when a law enforcement officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen." *United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997) (citing *Florida v. Bostick*, 501 U.S. 429, 494 (1991)). Such restraint on one's liberty may occur if, considering all the circumstances surrounding the encounter, "the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Id.* (citing *Bostick*, 501 U.S. at 437 (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991))).

One indication of a detention is the full obstruction of a person's pathway or means of travel. *See United States v. Berry*, 670 F.2d 583, 597 (5th Cir. 1982) (*en banc*) ("blocking an individual's path or otherwise intercepting his progress in any way is a consideration of great, and probably decisive, significance"); *United States v. Bowles*, 625 F.2d 526, 532 (5th Cir. 1980) (a seizure occurred when the detective blocked the defendant's pathway and showed government identification).

B.     Detention of a Motorist

The *Terry* analysis has been extended to traffic stops of motorists. A detention during a traffic stop is valid if an officer has reasonable suspicion that the detainee is violating a traffic law. *See Michigan v. Long*, 463 U.S. 1032, 1047-48 (1983); *United States v. Willis*, 431 F.3d 709, 714-15 (9th Cir. 2005). Upon such a stop, if an officer has a reasonable belief based on "specific and articulable facts...that the suspect is dangerous and the suspect may gain immediate control of weapons," the scope of the search of the vehicle may extend to the passenger compartment but is limited to only those areas in which a weapon may be placed or hidden. *Long*, 463 U.S. at 1049 (quoting *Terry*, 392 U.S. at 21).

However, during the course of a *Terry*-type detention of a motorist, an officer may extend the search beyond that permitted in *Long*, to search *e.g.* for contraband, but only if there is either probable cause to believe contraband is concealed within the car, *see United States v. Parr*, 843 F.2d 1228, 1232 (9th Cir. 1988), or reasonable suspicion based on "particularized, objective factors arousing suspicion of such a belief." *United States v. Chavez-Valenzuela*, 268 F.3d 719, 724 (9th Cir. 2001) (citing *United States v. Perez*, 37 F.3d 510, 513 (9th Cir. 1994)).

4

In *Perez*, the Ninth Circuit held that the officers had reasonable suspicion to exceed the traffic stop inquiry and request to search the driver's van for drug contraband, even though initially, the officers only observed the driver weaving across traffic lanes. 37 F.3d at 514. The court found additional "particularized, objective" factors that surfaced after the traffic stop to justify reasonable suspicion, including the driver's nervousness, avoidance of eye contact, profuse perspiration, fact that he was not the registered vehicle owner, that he was driving to a known "drug hub," and that his hands did not appear consistent with those of a mechanic, the driver's claimed profession. *Id.* at 514.

In *Chavez* by contrast, the Ninth Circuit held that officers, who initially stopped the driver for following another car too closely, did not have reasonable suspicion to justify prolonging the initial detention and searching the vehicle. 268 F.3d at 728. The officers' observations of the driver's excessively shaky hands, trembling body, and avoidance of eye contact, "in the absence of other particularized, objective factors, d[id] not support a reasonable suspicion of criminal activity, and d[id] not justify an officer's continued detention of a suspect after he has satisfied the purpose of the stop." *Id.* At 726. In affirming its ruling in *Perez*, the Ninth Circuit noted that while nervousness could give rise to suspicion, standing alone, it is insufficient "to justify further questioning unrelated to the reason for a traffic stop." *Id.* (citing *Perez*, 37 F.3d at 514).

### III.   ANALYSIS

A.   <u>Reasonableness of the Stop</u>

In the case at bar, there was an initial detention when Officer Campbell parked his official police vehicle directly behind Mr. Herrera's parked truck, effectively blocking any means of departure. *See Berry*, 670 F.2d at 597; *Bowles*, 625 F.2d at 532. It was plain to Mr. Herrera that this was a police vehicle when Officer Campbell shined the light on him and approached him with his hand on the gun in uniform. Mr. Herrera saw the police lights on top of the vehicle. A reasonable person in Mr. Herrera's situation would not have felt she or he was at liberty to ignore the police presence and leave. Although not a full custodial arrest, the initial detention constituted a stop requiring reasonable suspicion of unlawful activity. *See Terry*, 392 U.S. at 30; *Long*, 463 U.S. at 1047-48.

1  The fact that the truck was in a handicapped parking stall but had no handicapped license
2 plate suggests that a traffic law was being violated and provided Officer Campbell with at least
3 reasonable suspicion of a violation. *See Long*, 463 U.S. at 1047-48; *Willis*, 431 F.3d at 714-15.
4 While the absence of a handicapped license plate does not necessarily lead to the conclusion that Mr.
5 Herrera was violating a traffic law since he could have had a handicapped placard in the front dash
6 of his car, Officer Campbell at least has a reasonable suspicion to detain Mr. Herrera in a limited
7 manner and investigate further. *See Willis*, 431 F.3d at 715.

B.  <u>Reasonableness of the Search</u>

9  Since there is no claim in this case that Officer Campbell had reason to believe Mr. Herrera
10 was armed and dangerous, the scope of the *Terry* search here could exceed that which was permitted
11 in *Long* only if the officer had a reasonable suspicion that drug contraband is concealed in a car. *See*
12 *Chavez*, 268 F.3d at 728; *Perez*, 37 F.3d at 513. Upon approaching the truck, Officer Campbell
13 made several particularized, objective observations which gave rise to such suspicion: Mr.
14 Herrera's movement towards the center console, his wiping his hands on his pants, the appearance of
15 white powder on his pants, and the fact that he was parked in the Presidio at 1:00 a.m. There was no
16 evidence that Officer Campbell saw a donut wrapper that could have explained the white powder.
17 These particularized observations exceed the mere observation of nervousness in *Chavez* and is
18 more comparable to the multiple objective factors presented in *Perez's*. *See Perez*, 37 F.3d at 513-
19 514. Importantly, they were objective indicators not based on subjective hunches. Although it is a
20 close question, the Court concludes Officer Campbell had reasonable suspicion of contraband in Mr.
21 Herrera's truck.

22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

6

### IV.   CONCLUSION

The initial detention was justified by reasonable suspicion of a traffic violation. The search of the vehicle's center console was justified by reasonable suspicion of contraband. Hence, Mr. Herrera's arrest and the subsequent search that ensued were lawful.

The motion to suppress is therefore **DENIED**.

This order disposes of Docket Numbers 21, 22, 23, and 33.

A Status Hearing is set for Tuesday, July 18, 2006, at 9:30 a.m.

IT IS SO ORDERED.

Dated: June 27, 2006

EDWARD M. CHEN
United States Magistrate Judge