United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

               Plaintiff,

     v.

MAXIMILLIAN HERRERA,

               Defendant.

_____/

No. CR 05-0695 EMC

**AMENDED ORDER GRANTING DEFENDANT'S MOTION TO RECONSIDER DENIAL OF MOTION TO SUPPRESS AND GRANTING DEFENDANT'S MOTION TO SUPPRESS**

**(Docket No. 42)**

Defendant's motion came on for hearing on August 30, 2006.  Having considered the papers filed in support of and in opposition to the motion, the evidence herein,[1] and the argument of counsel, and good cause appearing therefor, the Court hereby **GRANTS** the motion to reconsider and upon reconsideration **GRANTS** Defendant's motion to suppress.

As to Defendant's first contention that the record did not support the finding that Officer Campbell had reasonable suspicion to seize Mr. Herrera's truck because he did not testify that he observed a non-handicapped license plate on the truck when he first effectuated the seizure, the Court finds that Officer Campbell's testimony supports such a finding.  Upon passing the vehicle, Officer Campbell shined his light illuminating the back of the vehicle.  He testified that he observed the back of the vehicle as depicted in the photo admitted as Exhibit 3.  As the photo makes clear, the

[1] The Court excludes from consideration the declaration of Officer Campbell filed in opposition to the motion.  Evidence closed upon conclusion of the evidentiary hearing herein.  Not only is the submission untimely, it constitutes inadmissable hearsay.

**United States District Court**

For the Northern District of California

1    license plate is prominently displayed.  *See* Tr. at 19- 21 (4/19/06 hearing).  Officer Campbell

2    concluded that the vehicle was illegally parked.  *Id.* at p. 41.  Although Officer Campbell was not

3    specifically asked either on direct or cross-examination whether he saw the non-handicapped license

4    plate, the Court concludes that, given his vantage point, the lighting, the plain visibility of the license

5    plate, and his stated conclusion that the vehicle was illegally parked, Officer Campbell did see the

6    non-handicapped license plate and therefore had reasonable suspicion of the parking violation.  Such

7    suspicion supported the seizure.  *Cf. United States v. Choudry*, __ F.3d __, 2006 DJDAR 11371 (9th

8    Cir. Aug. 25, 2006) (suspicion of parking violation sufficient basis to conduct investigatory stop of

9    vehicle).

10         As to Defendant's second contention that probable cause, not reasonable suspicion, is

11    required to conduct a search of a vehicle for contraband which exceeds the scope of a *Terry* search

12    for weapons, the Court, upon reexamination of Supreme Court and Ninth Circuit precedent,

13    concludes that Defendant is correct.  Whereas only reasonable suspicion is required to justify an

14    investigatory stop of an automobile and to warrant prolonged detention under certain circumstances,

15    a warrantless search of the vehicle for contraband must be based on probable cause.

16         Probable cause exists to search a vehicle "where the known facts and circumstances are

17    sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a

18    crime will be found."  *Ornelas v. United States*, 517 U.S. 690, 696 (1996).  Probable cause is "a fair

19    probability that contraband or evidence of a crime will be found" and is evaluated in light of the

20    totality of the circumstances.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Reasonable suspicion is a

21    less demanding standard and requires particularized and objectives factors giving rise to suspicion

22    that criminal activity is afoot.  *See Michigan v. Long*, 463 U.S. 1032, 1049 (1983); *Terry v. Ohio*,

23    392 U.S. 1, 21 (1968).

24         A routine traffic stop is similar to a *Terry* stop and may be predicated on reasonable

25    suspicion.  *See Knowles v. Iowa*, 525 U.S. 113, 117 (1998) (citing *Berkemer v. McCarty*, 468 U.S.

26    420, 439 (1984)).  Initially, an officer may only ask questions that are reasonably related to the

27    purpose of the stop.  *See United States v. Chavez-Valenzuela*, 268 F.3d 719 (9th Cir. 2001) (citing

28    *United States v. Perez*, 37 F.3d 510, 513 (9th Cir. 1994)).  However, the officer may expand the

**United States District Court**

For the Northern District of California

1    scope of his questioning "if he notices particularized, objective factors arousing his suspicion." *Id.*

2    An officer may  prolong a motorist's detention after the completion of the initial traffic stop if the

3    officer has "a reasonable and articulable suspicion that criminal activity [is] afoot." *United States v.*

4    *Hill*, 195 F.3d 258, 264 (6th Cir. 1999).

5            Because an investigatory traffic stop is similar to a *Terry* stop, a police officer may order

6    passengers out of the vehicle and conduct a protective frisk of vehicle compartments, limited to areas

7    in which a weapon may be hidden, when the officer has a reasonable suspicion that the suspect is

8    armed and dangerous. *See Michigan v. Long*, 463 U.S. at 1049; *Maryland v. Wilson*, 519 U.S. 408

9    (1997) (officer may order passengers out of car pending completion of stop even absent suspicion of

10    criminal activity or belief that occupants pose a threat to police safety).  While officer safety justifies

11    the additional, minimal intrusion of the *Terry* frisk, "it does not by itself justify the often

12    considerably greater intrusion attending a full-field-type search." *Knowles*, 525 U.S. at 117.  An

13    officer may search no more than is needed to relieve the suspicion of danger.

14            In the case at bar, there is no claim that Officer Campbell had reason to believe that Mr.

15    Herrera was armed and dangerous.  *See* Order Denying Defendant's Motion to Suppress at 5.

16    Officer Campbell's search of Mr. Herrera's truck cannot be justified as a protective search under

17    *Michigan v. Long*.  Nor can the search be justified as consensual since this Court has found that Mr.

18    Herrera did not give valid consent.

19            The question then is whether the search, based on Officer Campbell's suspicion of

20    contraband, required reasonable suspicion or full probable cause.  If only reasonable suspicion

21    suffices, this Court has already held such suspicion existed here.  If probable cause is required, the

22    Court finds, for the reasons stated below, no such cause was demonstrated here.

23            In its initial order, this Court cited *Chavez-Valenzuela*, 268 F.3d at 719, and *Perez*, 37 F.3d at

24    510, in holding that reasonable suspicion sufficed to justify a search of Mr. Herrera's vehicle for

25    drugs.  Although the language of the Ninth Circuit's decisions in *Chavez-Valenzuela* and *Perez* may

26    appear ambiguous on this point, viewed in their proper context, these cases merely hold that

27    prolonged detention beyond an initial traffic stop may be justified by reasonable suspicion.  In

28    *Chavez-Valenzuela*, the Ninth Circuit held that the initial traffic stop was reasonable, but the officer

**United States District Court**

For the Northern District of California

lacked the requisite reasonable suspicion necessary to justify the prolonged detention.  *See Chavez-Valenzuela*, 268 F.3d at 728.  The court held that nervousness alone was insufficient "to create a reasonable suspicion to prolong the detention, ask about drugs or search his vehicle."  *Id.*  The officer did not have the reasonable suspicion necessary to prolong the detention and, therefore, the subsequent search was automatically unlawful because it followed an unlawful detention.  *See id.*  The court did not go into a separate analysis as to whether the officer could, after a properly prolonged search, lawfully search the vehicle.  Because the court held the prolonged detention was unconstitutional, the search that followed was deemed unconstitutional and needed no separate analysis.

In *Perez*, 37 F.3d at 510, the Ninth Circuit held that the officers had reasonable suspicion of criminal activity to justify detaining the motorist and expanding the police questioning beyond the purpose of the initial traffic stop.  The *Perez* court held that the motorist voluntarily consented to a subsequent search of his vehicle, thereby obviating the need to determine the level of cause justifying a search.  *See id.* at 516.  Neither *Chavez-Valenzuela* nor *Perez* holds that reasonable suspicion can justify a search of the vehicle.  Indeed, in *United States v. Hill*, 195 F.3d 258 (6th Cir. 1999), cited in *Chavez-Valenzuela*, 268 F.3d at 726, the Sixth Circuit applied the reasonable suspicion standard to the initial stop and prolonged detention, but probable cause to the search.  *See Hill*, 195 F.3d at 273.

An examination of Supreme Court and Ninth Circuit precedent makes clear that search of a vehicle, even where the exception to a warrant applies, must be predicated on full probable cause.

In *Carroll v. United States*, 267 U.S. 132 (1925), the Supreme Court established the automobile exception to the warrant requirement of the Fourth Amendment.  The Supreme Court held that, while the impracticability of securing a warrant for a vehicle that can be quickly moved out of the locality excused the warrant requirement, probable cause was nonetheless required: "those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise."  *Id.* at 154.

Over the course of seventy years, the Supreme Court has refined the automobile exception in determining the circumstances under which a warrant is required, *e.g.*, to search a container in a

vehicle.  In so doing, the Court has repeatedly reaffirmed the principle that whatever the scope of the automobile exception to the warrant requirement, probable cause is needed to search the car for contraband.  *See California v. Acevedo*, 500 U.S. 565 (1991); *Pennsylvania v. Labron*, 518 U.S. 938 (1996); *Wyoming v. Houghton*, 526 U.S. 295 (1999); *Maryland v. Dyson*, 527 U.S. 465 (1999).  In *Almeida-Sanchez v. United States*, 413 U.S. 266 (1973), the Supreme Court stated:

> [T]he Carroll doctrine does not declare a field day for the police in searching automobiles.  Automobile or no automobile, there must be probable cause for the search . . . .  "In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for reasonable search permitted by the Constitution."

*Id.* at 269.

The Supreme Court has made explicit the distinction between the justification for an investigatory traffic stop and the search of a car:

> An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion, *Terry v. Ohio*, 392 U.S. 1,20 (1968), and a warrantless search of a car is valid if based on probable cause, *California v. Acevedo*, 500 U.S. 565, 569-570 (1991).

*Ornelas-Ledesma*, 517 U.S. at 693.

The Ninth Circuit has followed suit.  It has repeatedly held that a warrantless search of an automobile must be based upon probable cause.  *See United States v. Ibarra*, 345 F.3d 711, 715-15 (9th Cir. 2003); *United States v. Garcia*, 205 F.3d 1182, 1186-87 (9th Cir. 2000); *United States v. Hatley*, 15 F.3d 856, 858 (9th Cir. 1994); *United States v. Parr*, 843 F.2d 1228, 1232 (9th Cir. 1988).

In so holding, the court has emphasized that "mere suspicion" does not give rise to probable cause.  *See United States v. Vasey*, 834 F.2d 782, 788 (9th Cir. 1987).  The distinction between reasonable suspicion and probable cause, though somewhat elusive, is constitutionally significant and is material.  As recently explained by the Ninth Circuit, "[w]hile probable cause requirement for a warrant requires a 'fair probability that contraband or evidence of a crime will be found,' reasonable suspicion is less demanding and 'can arise from information that is less reliable than that require to show probable cause.'"  *United States v. Rowland*, __F.3d __, 2006 DJDAR 12421, at *12424 (9th Cir. Sept. 13, 2006).

United States District Court

For the Northern District of California

**United States District Court**

For the Northern District of California

1    In *Vasey*, 834 F.2d at 782, the Ninth Circuit held the following evidence was insufficient to

2    establish probable cause:

> 3   (1) As Officer Jensen approached the vehicle, he noticed Vasey
> stuffing his hand between the seats and handling something furtively
> 4   on the right rear floorboard. Vasey contends he was reaching for his
> wallet and unfastening his seatbelt; (2) Vasey had an outstanding
> 5   warrant for his arrest on a drug-related charge; (3) Vasey was carrying
> $1,128 in cash; (4) Officer Jensen noticed a sealed container of pills
> 6   and a small, cassette-sized container holding three pills. The three
> pills were imprinted with the word "aspirin", but it is unclear to what
> 7   extent Officer Jensen saw this imprintation; and (5) Officer Jensen had
> several years of police experience.

8

9    *Id.* at 788. The court concluded that the "five factors set out above are insufficient to establish

10   probable cause for the issuance of a warrant. There is little or no evidence indicating that Vasey's

11   car contained contraband." *Id.* at 788.

12    In the case at bar, the evidence is similarly deficient. There is no evidence that Mr. Herrera

13   exhibited any signs of drug use or was nervous or evasive. Nor was there evidence that this

14   particular location was a known drug spot. See RT 8 (Officer Campbell testifying that it is not too

15   often that vehicles are parked at this spot at 1:00 am in the evening and that he checks on them for

16   "safety reasons, people commit suicide, people to there to use drugs, you don't know, so you want to

17   check the vehicle"). The fact that Mr. Herrera appeared to be illegally parked in a handicap parking

18   space was not indicative of drug use.

19    The only evidence supporting a likelihood that contraband would be found (and on which

20   Officer Campbell based his belief that drugs would be found) was that Mr. Herrera made some

21   movement towards the center console upon Officer Campbell's approach, was seen rapidly wiping

22   his hands on his pants, and had white residue on his pants. While this evidence suffices to establish

23   reasonable suspicion, it does not establish a "fair probability that contraband or evidence of a crime

24   will be found" necessary to constitute probable cause.

25    Officer Campbell did not testify that Mr. Herrera's movement was "furtive" or secretive. *See*

26   RT 44. The observations of Mr. Herrera were equally consistent with innocuous behavior, such as

27   eating a sugar donut. Indeed, as it turns out, Mr. Herrera proved to the Court's satisfaction that he

28   had in fact purchased food, including powder donuts at a convenience market on his way to the

**United States District Court**

For the Northern District of California

1  Presidio, and that he was eating when Officer Campbell pulled up.  *See* RT 48, 52. Mr. Herrera

2  produced into evidence the actual receipt for the foods items purchased at the convenience store that

3  evening.

4        Moreover, Officer Campbell, upon seeing the white residue, did not ask Mr. Herrera to

5  explain it.  Had Officer Campbell done so and elicited an inconsistent, evasive, or incredible

6  response, such a response could have substantially contributed to a showing of probable cause.

7  Instead, Officer Campbell, upon seeing the white residue after asking if everything was okay (to

8  which Mr. Herrera responded yes), immediately commanded Mr. Herrera to open the center console

9  without making any further inquiry.  *See* RT 33.  As noted above, in his brief contact with Mr.

10  Herrera, Officer Campbell did not observe anything about his behavior (such as red or watery eyes,

11  unusual speech, signs of nervousness, inconsistent responses) indicative of drug use.

12        Without any other information or indication of drug use, Officer Campbell did not have

13  probable cause to search the vehicle for contraband.  *Compare Perez, supra,* 37 F.3d at 514

14  (constellation of factors -- suspect appeared nervous, refused to make eye contact, was not the

15  registered owner of vehicle, and was heading to a known drug hub, together with the fact that

16  appearance of his hands was inconsistent with his stated occupation -- gave rise to reasonable

17  suspicion justifying prolonged detention), *with Vasey,* 834 F.2d at 788 (observations including

18  furtive gesture and stuffing something between seats, outstanding warrant on drug charge, and

19  possession of over $1000 in cash insufficient to establish probable cause).

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28

**United States District Court**

For the Northern District of California

1    Accordingly, while the investigatory stop was permissible, the search of Mr. Herrera's

2  console for contraband was not.  Thus, the evidence of contraband found therein and the ensuing

3  search and results thereof must be suppressed.  Defendant's motion to suppress, upon

4  reconsideration, is hereby GRANTED.

5    A status conference shall be held on October 25, 2006 at 9:30 a.m.

6    This order disposes of Docket No. 42.

7

8    IT IS SO ORDERED.

9

10  Dated: October 17, 2006

11    _____

12    EDWARD M. CHEN
    United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28